IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 16-CV-2239-MSK-STV

**MICHAEL GIBSON,**

    Plaintiff,

*v.*

**JEFF BROWN, in his individual capacity,**

    Defendant.

---

**OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Summary Judgment (**# 103**), the Defendant's Response (**# 109**), and the Plaintiff's Reply (**# 111**); and the Defendant's Motion for Summary Judgment (**# 106**), the Plaintiff's Response (**# 110**), and the Defendant's Reply (**# 112**). For the following reasons, the Defendant's Motion is granted and the Plaintiff's Motion is denied as moot.

### I. JURISDICTION

The Court exercises jurisdiction under 28 U.S.C. § 1331.

### II. BACKGROUND[1]

In November 2014, Eric White, an officer with the Aurora Police Department, and Arapahoe County Sheriff Deputy J. Lofland were called to Belle's and Beau's Academy, a day care in Aurora, Colorado, by daycare teacher Cora Coon. (## **104-1 at 1**; **104-7 ¶ 1**, **3**.) She had

---

[1] The Court recounts the undisputed facts and the disputed facts in the light most favorable to Mr. Gibson, the nonmoving party. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

notified the police of potential child abuse that she observed while assisting a two-year old boy in the bathroom. Ms. Coon noticed red marks above the boy's buttocks that had not been there when she had seen the boy five days prior. (**# 104-7 ¶¶ 3–4**.)

The officers tried to contact the boy's parents but were unsuccessful. (**# 104-7 ¶¶ 16–17**.) Officer White observed the boy's injuries and questioned him, but the boy mostly shrugged in response. (**# 104-7 ¶¶ 5**, **10**.) Officer White also questioned the boy's five-year-old sister. (**# 104-7 ¶ 8**.) When asked if she was disciplined at home, said that her dad spanks her when she is in trouble and, one time, used a belt when she could not identify Mars as the fourth planet from the Sun. (**## 104-1 at 2**; **104-7 ¶¶ 12–13**.) Officer White asked if her dad also spanks her brother; she said yes, she had seen him do so. (**## 104-1 at 2**; **104-7 ¶ 14**.) At some point, Defendant Jeff Brown, another Aurora police officer, was called to the scene; Officer White conveyed the information he had gathered to Officer Brown. (**## 104-7 ¶ 19**; **104-8 ¶ 2**.) Officer White and Deputy Lofland departed. (**## 104-7 ¶ 18**; **104-8 ¶ 4**.) Officer Brown remained to speak with whoever picked up the children to continue the investigation. (**# 104-8 ¶ 4**.)

Plaintiff Michael Gibson, the children's father, came to the day care to pick up the children. (**# 104-1 at 3**.) Officer Brown encountered Mr. Gibson when he arrived. (**# 104-8 ¶ 7**.) Accounts of what transpired differ. Officer Brown contends that he told Mr. Gibson that he wanted to speak with him about child abuse and escorted him into an office at the day care for questioning. (**# 104-8 ¶¶ 8–9**.) Officer Brown maintains Mr. Gibson was free to go at any time. (**# 104-8 ¶ 36**.) Mr. Gibson states Officer Brown told him that he was under arrest, not free to leave, and that he generally demeaned Mr. Gibson while asking him questions. (**# 103 ¶¶ 12–15**.) During their conversation, Officer Brown spoke on the phone to Mr. Gibson's wife, who

confirmed that Mr. Gibson had spanked his son recently. (**# 104-8 ¶ 40**.) After being in the office for over an hour, Officer Brown issued Mr. Gibson a written summons for misdemeanor child abuse under C.R.S. § 18-6-401. (**# 104-8 ¶ 47**.)

Following the Court's order at the dismissal stage (**# 69**), the Amended Complaint (**# 58**) contains a single claim brought under 42 U.S.C. § 1983 for unlawful arrest in violation of the Fourth Amendment. Both parties move for summary judgment on that claim (**## 103**, **106**). Mr. Gibson contends that Officer Brown had no probable cause to arrest him, and Officer Brown contends that he had probable cause to arrest Mr. Gibson before Mr. Gibson arrived. Officer Brown also invokes qualified immunity.

### III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

This case involves cross motions for summary judgment. Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact, these motions must be evaluated independently. *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not

require the grant of another."); *In re Ribozyme Pharmaceuticals Inc. Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002).

## IV. DISCUSSION

The Court begins with Officer Brown's Motion, particularly his claim of qualified immunity. Qualified immunity protects individual state actors from civil liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). Because of the underlying purposes of qualified immunity, the Court treats qualified-immunity questions differently from other questions on summary judgment. *See Thomas v. Durastanti*, 607 F.3d 655, 662 (10th Cir. 2010). After a defendant asserts qualified immunity, the burden shifts to the plaintiff, who must: (1) show facts that "make out a violation of a constitutional right," and (2) establish that, at the time of the conduct at issue, it was clearly established under existing law that the defendant's conduct breached the constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court may address these questions in whichever order is best suited to the case. If the plaintiff fails to satisfy either prong of this inquiry, the Court "must grant the defendant qualified immunity." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001). However, if the plaintiff establishes the violation of a clearly established right, it becomes the defendant's burden to prove is no genuine issue of material fact and that she is entitled to judgment as a matter of law. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

For all practical purposes, the first prong of the analysis — the question of whether the evidence shows violation of a constitutional right — is the same as the determination of whether Mr. Gibson has come forward with sufficient evidence to establish a *prima facie* claim. In both contexts, Mr. Gibson must come forward with sufficient evidence, which if true, would

demonstrate a cognizable claim. The Court considers the evidence in the light most favorable to the Mr. Gibson. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The second analytical prong, the "clearly established" inquiry, focuses on whether the contours of the constitutional right were so well-settled in the context of the particular circumstances, that a "reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). To satisfy this prong, the burden is on Mr. Gibson to point to Supreme Court or Tenth Circuit precedent (or the clear weight of other circuit courts) that recognizes that the action taken would be a constitutional violation. *Schwartz v. Booker*, 702 F.3d 573, 587–88 (10th Cir. 2012); *see also Thomas*, 607 F.3d at 669 (plaintiff bears the burden of citing to requisite authority). It is not necessary for Mr. Gibson to identify a decision with identical facts, but he must identify Circuit or Supreme Court authority that finds a constitutional violation in the context of similar facts, rather than simply stating "a broad general proposition". *See, e.g.*, *Brosseau v. Haugen*, 543 U.S. 194, 198–200 (2004).

With these considerations in mind, the Court turns to Mr. Gibson's claim that Officer Brown unlawfully arrested him. Mr. Gibson argues that there was no probable cause to arrest him and Officer Brown argues that no arrest occurred. Thus, the court views the evidence submitted to determine (1) whether it is sufficient to determine that Mr. Gibson was arrested, and (2) if so, whether Officer Brown had probable cause to do so.

**A. Arrest**

There are three categories of police encounters with citizens: consensual encounters, investigative stops, and arrests. *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012). "Consensual encounters are not seizures within the meaning of the Fourth Amendment, and need not be supported by suspicion of criminal wrongdoing." *Oliver v. Woods*, 209 F.3d 1179, 1186

(10th Cir. 2000). Investigative stops, also known as *Terry* stops, occur when officers may stop and briefly detain a person for investigative purposes. For this type of stop, an officer must have only a reasonable suspicion that criminal activity may be afoot. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Finally, an arrest is a seizure that occurs only when, "by means of physical force or a show of authority, an individual's freedom of movement is restrained." *Romero v. Story*, 672 F.3d 880, 885 (10th Cir. 2012). Absent a warrant, an arrest must be based on probable cause to be lawful. *A.M. v. Holmes*, 830 F.3d 1123, 1138 (10th Cir. 2016). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008).

Not every arrest is clearly telegraphed as such. A detention can morph from *Terry* stop into "an arrest if it continues for an excessive time or closely resembles a traditional arrest." *Morris*, 672 F.3d at 1192. The Supreme Court has declined to adopt a time limitation for a *Terry* stop, but has disapproved of a 90-minute detention. *See United States v. Place*, 462 U.S. 696, 709–10 (1983). Even a short detention can become an arrest if it carries the accoutrements of arrest, such as the use of handcuffs or custodial interrogation. *See Dunaway v. New York*, 442 U.S. 200, 212 (1979). Thus, the question of when an investigative stop becomes an arrest for Fourth Amendment purposes is a highly factual inquiry.

The parties dispute whether an arrest occurred before Officer Brown cited Mr. Gibson. Viewing the evidence in the light most favorable to Mr. Gibson, as the Court must, Officer Brown informed Mr. Gibson upon his arrival at the day care that he wanted to speak with him about child abuse and before escorting him into the office — a sequestered area for questioning

7

— told him that he was under arrest. The fact that Mr. Gibson was not handcuffed is not determinative. *See Dunaway v. New York*, 442 U.S. 200, 212 (1979). The authoritative statement by Officer Brown that Mr. Gibson was under arrest and the directive that Mr. Gibson proceed to a sequestered area for questioning is sufficient. The question then becomes whether Officer Brown had probable cause to arrest Mr. Gibson.

**B. Probable Cause**

Probable cause to arrest exists where, under the totality of the circumstances, a reasonable person would believe that an offense has been committed by the person arrested. *United States v. Martin*, 613 F.3d 1295, 1302 (10th Cir. 2010). "When assessing whether an officer had probable cause to arrest an individual, courts examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Holmes*, 830 F.3d at 1138; *see also Illinois v. Gates*, 462 U.S. 213, 232 (1983) (calling probable cause a fluid concept not easily "reduced to a neat set of legal rules"). "Neither the officer's subjective beliefs nor information gleaned *post hoc* bear on this inquiry." *Manzanares v. Higdon*, 575 F.3d 1135, 1144 (10th Cir. 2009). "Ultimately, all that matters is whether the officer possessed knowledge of evidence that would provide probable cause to arrest the individual on some ground." *Holmes*, 830 F.3d at 1139.

The elements of child abuse under Colorado law are straightforward — a "person commits child abuse if such person causes an injury to a child's life or health". C.R.S. § 18-6-401(1)(a). Officer Brown stated in his deposition that he did not have probable cause to arrest Mr. Gibson when he arrived at the day care (**# 103 at 35**, **60:12–15**), but the Court's inquiry is not limited to the officer's subjective viewpoint. *See Manzanares*, 575 F.3d at 1144. Rather, the

8

Court considers all of the circumstances viewed in an objective light. The narrative of Officer White states that:

- Mr. Gibson dropped his son off at the day care the morning of November 18, 2014.
- Ms. Coon observed red marks and scratches above the boy's buttocks that were not there the last time he was at day care on November 13.
- Officer White spoke to Mr. Gibson's daughter, who told him that her dad spanks her if she gets in trouble, usually with his hand, but one time, "when she didn't know the 4th planet, he spanked her with a belt." Mr. Gibson's daughter told Officer White that she had seen her father spank her brother. (**# 103 at 63–65**.)
- Based on his experience the boy's injury was not accidental and appeared to be the result of being struck. (**# 104-7 ¶ 10**.)

Considering all of the circumstances, even those known to other officers, there are sufficient facts to constitute a reasonable belief that Mr. Gibson's son had been the victim of the crime of misdemeanor child abuse, and that Mr. Gibson had committed the abuse. Thus, assuming that Officer Brown arrested Mr. Gibson, he had probable cause to do so.[2]

As a result, there is no cognizable claim against Officer Brown for an unlawful arrest. This determination renders all other arguments made in Mr. Gibson's Motion for Summary Judgment and Officer Brown's Motion for Summary Judgment moot. Because the unlawful-arrest claim is the only claim remaining after the Court's order at the dismissal stage (**# 69**), it is appropriate that summary judgment enter in favor of Officer Brown.

---

[2] None of the evidence submitted with Mr. Gibson's Motion for Summary Judgment controverts the foregoing evidence. In fact, Mr. Gibson attaches Officer White's contemporaneous narrative in full. (**# 103 at 63–65**.)

9

## V. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment (**# 106**) is **GRANTED** and the Plaintiff's Motion for Summary Judgment (**# 103**) is **DENIED AS MOOT**. Judgment shall issue in favor of the Defendant.

Dated this 17th of September, 2019.

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
Senior United States District Judge