IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 16-cv-2239-MSK-STV

MICHAEL GIBSON,

    Plaintiff,

v.

JEFF BROWN, in his individual capacity,

    Defendant.

---

**OPINION AND ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to Mr. Gibson's Motion to Alter or Amend Judgment **(# 118)** and reconsider this Court's September 17, 2019 Opinion and Order on Cross Motions for Summary Judgment **(# 115)** ("Opinion"), the Defendant's response **(# 121)**, and Mr. Gibson's reply **(# 124)**.

## BACKGROUND

The Court assumes the reader's familiarity with the Opinion and will not independently summarize it. It is enough to note that this case concerns a claim by Mr. Gibson[1] brought under 42 U.S.C. Section 1983 for violation of his Fourth Amendment rights. Mr. Gibson alleges that

---

[1] Mr. Gibson initiated this case without the assistance of an attorney. Accordingly, the Court reads his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). Such liberal construction is intended merely to overlook technical formatting errors and other defects in Mr. Gibson's filings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Indeed, although he is not represented by counsel, Mr. Gibson must still comply with procedural rules and satisfy substantive law to be entitled to relief. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2008).

Officer Brown lacked probable cause to arrest him in conjunction with suspected abuse of his two year old son.

The original Complaint named not only Officer Brown, but another officer from the Aurora Police Department, Officer White, and the City of Aurora. Early in the case, a Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) was filed in which all Defendants joined **(# 52)**. After Mr. Gibson amended his Complaint **(# 58)** and following consideration of briefing from all parties, the Magistrate Judge issued a Recommendation that claims against Officer White, the Aurora Police Department, and the City of Aurora be dismissed. **(# 63)**. The Recommendation urged dismissal of malicious prosecution and any official capacity claim against Officer Brown, leaving only the claim against Officer Brown under 42 U.S.C. § 1983 for violation of Mr. Gibson's Fourth Amendment rights to be free from arrest without probable cause. **(# 63)**. Mr. Gibson objected to the Recommendation **(# 66)**, and after considering the Recommendation and the parties' briefing with regard to the objection, the Court adopted the Recommendation **(# 69)**.

Later, the parties filed cross Motions for Summary Judgment **(# 103, # 106)**. Considering the parties' submissions, the Court issued the subject Opinion. **(# 115)**. In it, the Court began with Officer Brown's Motion in which he asserted the defense of qualified immunity. The Court began with whether the evidence presented was sufficient to show a constitutional violation. Officer Brown argued that no arrest occurred, and Mr. Gibson argued that Officer Brown had no probable cause to arrest him. Noting that the burden was on Mr. Gibson to show both that an arrest occurred and that it was unlawful, the Court liberally construed his arguments and evidence. The Court found that the evidence was sufficient to establish that an arrest occurred, but not to establish that Officer Brown lacked probable cause in effecting it. Thus, Mr. Gibson's

evidentiary showing was insufficient to establish that his arrest was unlawful. Accordingly, Officer Brown was entitled to summary judgment, which entered on September 17, 2019. On September 25, 2019, Mr. Gibson filed the instant motion **(# 118)** requesting reconsideration of the findings and conclusions in the Opinion.

## **DISCUSSION**

Because Mr. Gibson's motion was filed within 28 days after entry of judgment, the Court treats it as one pursuant to Fed. R. Civ. P. 59(e). Relief under Rule 59(e) is reserved for extraordinary circumstances, and is not an opportunity to re-argue issues already addressed or to advance arguments that could have been raised in prior briefing. Relief is appropriate only when there has been an intervening change in the controlling law, where previously-unavailable evidence has been discovered, or where there is a need to prevent manifest injustice because the court has misapprehended the facts, a party's position, or the controlling law. *Burke v. Bigelow*, ––– Fed.Appx. ––––, 2019 WL 5212884 (10th Cir. Oct. 10, 2019) (citing *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

Giving Mr. Gibson's motion a generous reading, the Court understands it to allege that the Court misapprehended the facts and thus erred in finding that he had not shown that Officer Brown arrested him without probable cause. In particular, Mr. Gibson contends that: (1) the Court's Opinion is inconsistent with findings made by the Magistrate Judge in his Recommendation; (2) in its Opinion, the Court did not consider particular "exculpatory facts", and (3) the Court gave too much credence to the statement of Mr. Gibson's daughter. Some of these arguments repeat those made in conjunction with the summary judgment motions, but some are newly raised. The Court addresses each in turn.

3

### 1. Differences between the Recommendation and the Opinion

Mr. Gibson's first argument goes to the similarities and differences between a ruling on a Motion to Dismiss and a ruling on a Motion for Summary Judgment. The motions are similar in that the Court usually makes no factual determinations in ruling on either. These are both procedural motions which means that the Court does not determine what actually happened that gave rise to the lawsuit; but instead determines what next steps will be taken in the legal process.

Because they serve different purposes, a Motion to Dismiss and a Motion for Summary Judgment require application of different standards. The function of a Motion to Dismiss is a determination as to whether a claim described in the Complaint or Amended Complaint can proceed. The Court must "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). In doing so, the Court is limited to the four corners of the Complaint or Amended Complaint and may not consider anything outside of its allegations. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001). The Court must *assume* that each allegation is true and then ask whether the allegations as a whole are sufficient to state a legally cognizable claim. *Ashcroft*, 556 U.S. at 678-679; *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010); *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001); *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

In contrast, a Motion for Summary Judgment focuses on whether there is enough evidence to proceed to trial.  *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). To proceed to trial, the party with the burden of proof must submit enough evidence to prove the claim in the absence of contradictory evidence.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Concrete Works of Colo., Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  Then, to go to trial, the opposing party must show conflicting evidence that creates a genuine dispute as to a material fact.  *White*, 45 F.3d at 360; s*ee Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If the party with the burden of proof does not submit sufficient competent evidence to prove his claim, then there is no need for a trial and summary judgment is entered in favor of the opposing party.  *White*, 45 F.3d at 360; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see Anderson*, 477 U.S. at 248; *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).

Determination of a Motion for Summary Judgment is not a determination of what happened, nor of who wins.  It is simply a determination of whether there should be a trial. *White*, 45 F.3d at 360.  Although a determination of a Motion to Dismiss affects what claims are considered at the summary judgment stage, specific findings that a claim is plausible has no effect on the determination of a Motion for Summary Judgment.  This is because the Motion to Dismiss concerns only factual allegations and the Motion for Summary Judgment concerns the evidence proffered to the court in conjunction with the motions.  Put another way, the Recommendation in this case identified a claim that Mr. Gibson might be able to prove; the Opinion determined that he did not have sufficient evidence to do so.

Some confusion may have arisen because of certain statements in the Recommendation. "Defendants fail to offer any explanation for how the facts available to Defendant Brown at the time of the seizure support a finding of probable cause. **(# 52, # 54)** Instead, Defendants argue only that Plaintiff failed adequately to allege the absence of probable cause. **(# 52 at 4-5, 7 n.2; # 54 at 4-5)**". **(# 63 at 20)**. These statements, however, should not be understood to be a factual finding that Officer Brown had no probable cause to arrest Mr. Gibson. The Defendants had no obligation to present evidence as to probable cause at this juncture. Indeed, had they done so, the Magistrate Judge could not have considered it. *See Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006); *County of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). Instead, these statements are best understood as explaining that the Magistrate Judge considered the Defendants' arguments and was not persuaded that the allegations in the Amended Complaint were insufficient.[2] Thus, the Court finds that there is no inconsistency between the Recommendation and the Opinion.

### 2. Inculpatory and Exculpatory Evidence

Mr. Gibson's second argument is that the Opinion did not consider both inculpatory and exculpatory evidence. Again, recitation of the applicable law is helpful.

Because Officer Brown asserted qualified immunity in his Motion for Summary Judgment, Mr. Gibson was required to come forward with sufficient, competent evidence to show Officer Brown did not have probable cause to arrest him. This means that the evidence submitted by Mr. Gibson in opposition to Mr. Brown's motion or in support of his own Motion

---

[2] No party objected to the Recommendation that the Section 1983 claim against Officer Brown proceed. Thus, there was no discussion of it in the Court's Order adopting it. **(# 69)**

for Summary Judgment had to show that an objectively reasonable officer would not have believed that Mr. Gibson had abused his son.

"To determine whether an officer had probable cause to arrest an individual, [courts] examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotation marks and citations omitted). Probable cause exists where, under the totality of the circumstances, the officer had "a reasonable ground for belief of guilt" that is "particularized with respect to the person to be searched or seized." *Id.* The probable cause standard is incapable of precise definition or quantification because it deals with probabilities and depends upon the totality of the circumstances. *Id.* Generally, probable cause for an arrest exists when the "facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been … committed." *Mink v. Knox*, 613 F.3d 995, 2010 WL 2802729 (10th Cir., July 10, 2010) (citing *Bowling v. Rector*, 584 F.3d 956, 969 (10th Cir. 2009)); *Oliver v. Woods*, 209 F.3d 1179, 1190 (10th Cir. 2000); *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1260 (10th Cir. 1998). This standard makes clear that, in assessing whether the officer had probable cause, the Court must examine the facts as they appeared to the officers at the time the decision to arrest was made.

Mr. Gibson is correct that the existence of probable cause depends upon all of the facts and circumstances known to the arresting officer and his fellow officers at the time of the arrest. The determination of probable cause is based "on the totality of the circumstances," *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007). Although some courts characterize the totality

of the circumstances as including "inculpatory" and "exculpatory" information, such characterization is not necessary. *See id.*; *Buck v. City of Albuquerque*, 549 F.3d 1269 (10th Cir. 2008); *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004). "The quantum of proof necessary to establish probable cause is 'a substantial probability' that the suspect has committed [a] crime; 'bare suspicion' of the suspect is not sufficient." *Brickey v. Weyler*, 2013 WL 1137132, at *3 (D. Colo., March 19, 2013) (quoting *Storey v. Taylor*, 696 F.3d 987, 992 (10th Cir. 2012)).

The Opinion expressly refers to the Court's review of all of the evidence presented by the parties in conjunction with their motions and stipulated facts in the record. The Court found that the stipulated facts were sufficient to establish probable cause. Or put another way, the stipulated facts prevented Mr. Gibson from establishing that there was no probable cause. The stipulated facts[3] were:

1) Mr. Gibson dropped his 2-year-old son off at the day care the morning of November 18, 2014;

2) Ms. Coon, a daycare provider, observed red marks and scratches above the boy's buttocks that were not there the last time he was at day care on November 13;

3) Officer White observed the marks, tried to interview Mr. Gibson's son, and spoke to Mr. Gibson's 5 year old daughter, who told him that her dad spanks her if she gets in trouble, usually with his hand, but one time, "when she didn't know the

---

[3] In addition, there was no dispute that actions causing the observed injury constituted a crime under Colorado law. Colo. Rev. Stat. § 18-6-401(1)(a) provides, "[a] person commits child abuse if such person causes an injury to a child's life or health, or permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health . . ." Parents, however, are "legally authorized" to use "reasonable and appropriate physical force upon [a minor child], when and to the extent it [is] reasonably necessary and appropriate, to maintain discipline or promote the welfare of the minor." CJI-CRIM. H:10 (2017).

8

> 4th planet, he spanked her with a belt." Mr. Gibson's daughter told Officer White that she had seen her father spank her brother;
>
> 4) Based on Officer White's experience, the boy's injury was not accidental and appeared to be the result of being struck.

Mr. Gibson did not then, and does not now dispute these facts. Rather, he directs the Court to what he characterizes as "exculpatory facts" which were identified in his Response to Officer Brown's Motion for Summary Judgment. These are that:

> 1) Officer White's determination that the injuries were not caused by a hand but by a belt or whip.
>
> 2) The victim's sister's statement that the victim was only spanked with a hand.
>
> 3) Officer White's determination that the injuries were inflicted during a time that the victim's sister stated that "they" were not spanked.
>
> 4) The victim answered "No" when asked if anyone hurt him.
>
> 5) Officer White made no determination of who inflicted the abuse.

Mr. Gibson offers no citation to the record for any of the identified "exculpatory facts", however the first four "facts" are apparently loosely derived from Officer White's report found at (**# 104-1**). The Court uses the phrase "loosely derived" because the characterization of the report's contents is not entirely accurate nor complete.

According to Officer Wilson's report, he found two groupings of injuries on the victim's back just above his buttocks. These were at different stages of healing – one group that had apparently been inflicted 3-5 days before and one group that been inflicted 1-2 days before. The injuries appeared to have been inflicted by a belt or whip. The victim's sister stated that her father had struck her with a belt, that she had seen her brother be spanked but had not seen him

9

be spanked with a belt. She said that neither she nor her brother had gotten in trouble "in the past few days". Officer Wilson's report also recited his attempt to interview the victim, but at 2 ½ years old his responses were mostly shrugs. He gave no verbal responses and his only non-verbal affirmative and negative responses were to questions to see his back and did his father hurt him, respectively.

As to "exculpatory facts" one through three, the Court defers to the evidence rather than Mr. Gibson's characterization. Specifically addressing this evidence, the Court's conclusion remains the same – the evidence does not undercut a finding of probable cause; to the contrary, it supports it. As to "exculpatory fact" number four, due to the victim's age and non-verbal responses, the Court gives it little weight. As to "exculpatory fact" number five, it is irrelevant – it is not necessary that Officer White have made a subjective determination as to who inflicted the abuse. *Buck*, 549 F.3d at 1281. Thus, addressing all of the "exculpatory facts" identified by Mr. Gibson, the Court reaches the conclusion – Mr. Gibson failed to come forward with sufficient evidence to show that Officer Brown lacked probable cause to arrest him.

### 3. Improper Reliance on the Statement of Mr. Gibson's Daughter

Mr. Gibson also contends that the Court erred because it relied "solely upon the alleged statement of [his] daughter" made to Officer White. **(# 118 at 2)**. As the Opinion expressly states, the Court reviewed the entire record and considered the totality of the circumstances. In essence, Mr. Gibson argues that the Court should have discounted or disregarded the statements made by his five-year-old daughter. For this proposition, Mr. Gibson relies upon *United States v. Shaw*, 464 F.3d 615 (6th Cir. 2006).

His reliance is misplaced because the facts in *Shaw* are dissimilar, and the portion of the opinion quoted is *dicta*.[4] *Shaw* was an appeal from a denial of a motion to suppress statements obtained in an interview following an allegedly warrantless arrest. The Defendant had been charged with multiple counts of child sexual abuse, and the issue presented on appeal was whether law enforcement officers had probable cause to arrest him. In deciding to arrest the Defendant, law enforcement officers relied, in part, on statements by the victim's mother about what her three-year-old child told her, but no one interviewed the child. Although the opinion discusses whether a three-year-old can provide competent evidence for a probable cause determination, ultimately the Court's determination that there had been no probable cause was not based upon the propriety of police "rely[ing] on the statements of a three-year-old child." *Id.* at 624. Rather, the problem was that the police did not interview the child at all and instead "relied solely upon the mother's allegation that the child had made a statement indicating possible abuse." *Id.* The facts in *Shaw* are not the same as in this case. Here, Officer White spoke to Mr. Gibson's daughter as well as to day care providers, and also viewed the obvious red marks on the boy's buttocks.

---

[4] The statement quoted by Mr. Gibson from *Shaw* that the court was unaware "of any situation in which the uncorroborated hearsay statement of a child as young as three, standing alone, has been considered sufficient to establish probable cause," was part of a discussion about the age of potential witnesses. It is taken out of context, and is *dicta.* Interestingly, however, immediately after making this observation, the court referred to Tenth circuit authority in a civil case in which the testimony of a five-year-old and almost four-year-old was at issue. *Easton v. The City of Boulder*, 776 F.2d 1441 (10th Cir. 1985). In *Easton,* the Court addressed an argument similar to that made by Mr. Gibson, here. "Mr. Easton seems to suggest that because Damian was only 5 years and 9 months old and Michael only 3 years and 10 months old, their testimony was somehow suspect to begin with. This is an entirely unacceptable point of view. In a great many child molestation cases, the only available evidence that a crime has been committed is the testimony of children. To discount such testimony from the outset would only serve to discourage children and parents from reporting molestation incidents and to unjustly insulate the perpetrator of such crimes from prosecution." *Id.* at 1449.

In sum, Mr. Gibson's motion advances no intervening changes in the controlling law, no previously-unavailable evidence, nor any instance of manifest injustice. To the extent that he has rehashed previously made arguments that had been rejected, his motion is improper. *See Pack v. Hickey*, 776 Fed.Appx. 549, 558 (10th Cir. 2019). As to those new matters that he has raised, the Court has reconsidered the evidence and reaches the same conclusion it did previously. Mr. Gibson has not come forward with sufficient evidence to demonstrate a constitutional violation – i.e. that Officer Brown lacked probable cause to arrest him.

## **CONCLUSION**

Accordingly, Mr. Gibson's Motion to Alter or Amend Judgment **(# 118)** is **DENIED**.

Dated this 9th day of April, 2020.

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
Senior United States District Judge